***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell with minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to the joinder or non-joinder of parties.
4. An employee-employer relationship existed between Plaintiff and Defendants on the relevant dates in question.
5. The carrier liable on risk on March 3, 1999, is Atlantic Mutual Insurance Company.
6. Plaintiff is receiving the maximum compensation rate for 1999 in the amount of $560.00 per week.
7. Plaintiff is currently receiving temporary total disability payments from Defendants.
8. The employee sustained an injury by accident on March 3, 1999, arising out of and in the course of his employment with Defendants.
9. Plaintiff's wife has been receiving benefits for attendant care services effective May 28, 2004, at the rate of $10.00 hourly for 42 hours per week ($420.00 weekly).
10. The issues for determination are:
 (a) Whether Plaintiff is entitled to attendant care services between March 3, 1999, and May 27, 2004;
 (b) Whether Plaintiff is entitled to an increase in the hourly rate paid for attendant care services; *Page 3 
 (c) Whether Plaintiff is entitled to an increase in the hours per week of attendant care services;
 (d) Whether Plaintiff is entitled to attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88.1 for Defendants' litigiousness in defending this matter?
 *********** EXHIBITS
The following documents were accepted into evidence by the Deputy Commissioner as exhibits:
1. Stipulated Exhibit-Pre-Trial Agreement.
2. Plaintiff's Exhibit — Pictures of Plaintiff's wife providing attendant care to Plaintiff.
3. Plaintiff's Exhibit — Plaintiff's daily care schedule.
4. Plaintiff's Exhibit — List of Plaintiff's doctor and therapy visits from March 3, 1999 through May 27, 2004.
5. Plaintiff's Exhibit — February 9, 2004 letter from Dr. Al. D. Hudson.
6. Plaintiff's Exhibit — June 14, 2006 letter from Dr. Al D. Hudson.
7. Plaintiff's Exhibit — March 4, 2004 letter from Dr. John S. Gaul, III.
8. Plaintiff's Exhibit — August 5, 2006 letter from Dr. John S. Gaul, III.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. On March 3, 1999, Plaintiff sustained a crush injury to his left hand from an industrial accident when his hand was caught in a machine while attempting to remove a jammed bottle from the machine. The parties have stipulated that Plaintiff sustained a compensable injury to his left hand on March 3, 1999. Plaintiff has been receiving ongoing temporary total disability compensation at the maximum compensation rate for 1999, in the amount of $560.00 per week.
2. Plaintiff was hospitalized and treated for his injury by Dr. John S. Gaul, III. Dr. Gaul first saw plaintiff on March 4, 1999. Dr. Gaul testified that Plaintiff had open injuries to his hand, as well as damage to arteries, tendons and ligaments in his wrist. He further testified that Plaintiff did not have good circulation in his hand due to damage to blood vessels. As a result of his injury, Plaintiff underwent emergent repair because the hand was nearly amputated. Plaintiff underwent a second surgery on August 17, 1999.
3. Plaintiff had follow-up visits with Dr. Gaul. He continued to have difficulty with pain in his left hand. For example, on December 17, 1999, Plaintiff continued to complain of burning pain in his left arm, and a great deal of stiffness.
4. On January 14, 2000, Plaintiff presented with complaints of overuse of his right hand. He complained of pain symptoms in his right arm, elbow and shoulder. This was the first time Plaintiff reported any complaints for his right hand.
5. On February 25, 2000, Plaintiff complained of swelling that appeared to be cellulitis in his left hand and had more complaints of pain in his right arm. At that time, Dr. Gaul referred Plaintiff to therapy for his right arm, in addition to his left arm.
6. Plaintiff was diagnosed with reflex sympathetic dystrophy with regards to his left hand. Dr. Gaul described the condition as a poorly understood disorder that causes swelling and pain *Page 5 
and dysfunction in the hand or arm, associated with the abnormality of the sympathetic nerve system.
7. On June 21, 2000, Plaintiff underwent an MRI of the right elbow. The MRI revealed a partial thickness tear of the tendon. Subsequently, plaintiff was treated with therapy and an elbow strap.
8. Plaintiff next saw Dr. Gaul on August 11, 2000. Most of Plaintiff's right arm pain had been relieved with the use of the elbow strap. Dr. Gaul's recommendations for the right arm were no repetitive lifting, no lifting greater than two pounds, and continued use of the elbow strap. Dr. Gaul felt Plaintiff had reached maximum medical improvement for his left hand on August 11, 2000. It is uncontested that Plaintiff has limited use of his left hand.
9. At Plaintiff's November 20, 2003 visit with Dr. Gaul, he had continued complaints of pain, inability to use the left side, as well as lateral epicondylitis, or pain in the right elbow and right arm. Dr. Gaul recommended continued use of a brace and referred Plaintiff to a home occupational therapist for an evaluation of his needs for activities of daily living at home.
10. On March 4, 2004, Dr. Gaul wrote a letter to Plaintiff's attorney indicating that Plaintiff needed six hours of attendant care. Dr. Gaul's 2004 letter specifically stated that Plaintiff's wife "would certainly be the most appropriate person" to provide attendant care. Dr. Gaul had not recommended any attendant care prior to that time.
11. In 2004, Plaintiff's additional authorized treating physician Dr. Al. D. Hudson wrote a letter stating that Plaintiff was in need of at least six hours of attendant care daily. Dr. Hudson's 2004 letter specifically stated that Plaintiff's wife "is the logical person to provide this assistance." *Page 6 
12. Plaintiff did not request approval of attendant care from a family member until 2004.
13. Based on Dr. Gaul's March 4, 2004 letter, Defendants initiated attendant care benefits on May 28, 2004. Plaintiff's wife is paid $420.00 per week for attendant care services she provides her husband. She is paid at the rate of $10.00 per hour for 6 hours per day, 7 days per week.
14. In 2006, both Dr. Gaul and Dr. Al. D. Hudson wrote letters clarifying that Plaintiff had been in need of six hours of daily care since the date of his injury.
15. Defendants do not contest that Plaintiff is entitled to attendant care services and that his wife is the appropriate person to provide and be compensated for those services.
16. At deposition, Dr. Gaul testified that he has treated individuals with only one functional upper extremity, and in his experience, these individuals can and do live independently on their own. Dr. Gaul testified that the six hours of attendant care he previously recommended might be excessive. Dr. Gaul further testified that other than the two weeks following surgery, attendant care might not be required.
17. The undersigned gives little weight to Dr. Gaul's testimony at deposition as his responses to Defendants' questions were based on attendant care scenarios the undersigned find were not completely accurate as to the level of care Plaintiff's wife has provided to Plaintiff. In fact, in response to Plaintiff's questions, Dr. Gaul admitted that Plaintiff does have difficulty in any activities requiring two hands. For example, Plaintiff can brush his teeth, but he would need Mrs. Erwin to put toothpaste on the toothbrush; or he can drink from a cup, but would require Mrs. Erwin to open the bottle to pour the drink into the cup. *Page 7 
18. Plaintiff's wife drove her husband on 211 round trips to doctor and therapy visits between March 4, 1999 and May 27, 2004. According to her testimony and Plaintiff's Exhibit 2, Linda Erwin began a typical day during the relevant period, assisting her husband daily at 6:00 a.m. and continuing with intermittent care until around 10:30 p.m. Plaintiff's wife prepared equipment and put the CPM on plaintiff's left arm three times a day. Plaintiff's wife also set up and put on the electrical stimulation machine for plaintiff's right arm three times a day and cleaned all equipment and assisted plaintiff with bathing, shaving, dressing, opening bottles and cans, and cutting up his food.
19. Defendants presented evidence that Plaintiff does have a valid driver's license, and that he does, in fact, drive short distances on his own. Defendants presented evidence that many of the tasks that Plaintiff's wife performs are menial tasks that only require a few minutes to complete (for example, both witnesses testified that it takes 15-20 minutes for Plaintiff's wife to assist Plaintiff in putting on his CPM machine). Defendants presented further evidence that Plaintiff can do the following things on his own: walk, sit and stand, get in and out of bed, use the phone, use a remote, use the restroom, drive some, eat on his own, cook some, and hold and bring a drink to his mouth. In addition, Plaintiff's wife does leave Plaintiff home alone.
20. Plaintiff's wife did not work outside of the home during the five years leading up to Plaintiff's workers' compensation injury. She testified that before his injury, she did most of the work around the house, including preparing Plaintiff's meals, doing the laundry, vacuuming and things of that nature. Further, Plaintiff testified that he has been provided a few utensils that assist him in doing things on his own.
21. Based on the greater weight of the evidence in its entirety, it is determined that Plaintiff is entitled to six hours of daily attendant care benefits to be provided by his wife from *Page 8 
March 4, 2004, and continuing until further Order of the Commission. A review of this evidence reveals by the greater weight that the attendant care services which plaintiff's wife has provided and continues to provide to Plaintiff go beyond what services were provided prior to Plaintiff's accident and beyond what may be defined as merely carrying out her marital duties.
22. Plaintiff has not presented sufficient evidence that he is entitled to an increase in the hourly rate paid for attendant care services. Specifically, Plaintiff has not presented comparative evidence of the current hourly rate paid for the level of attendant care services he receives.
23. Plaintiff has not presented sufficient evidence that he is entitled to an increase in the hours per week of attendant care services.
24. Defendants' actions in this matter were not unreasonable and were not indicative of stubborn, unfounded litigiousness.
25. The medical treatment Plaintiff received as a result of his compensable injury was reasonably required to effect a cure, provide relief and lessen his disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On March 3, 1999, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with Defendants-Employer. N.C. Gen. Stat. § 97-2 (6).
2. It is well settled that the workers' compensation act provides for the payment of attendant care services. In providing payment for attendant care services, the employer's *Page 9 
liability is not just to trained professionals, but also to family members who provide necessary attendant care services. Levens v.Guilford County Schools, 152 N.C. App. 390, 567 S.E.2d 767 (2002);London v. Snak Time Catering, Inc., 136 N.C. App. 473, 525 S.E.2d 203
(2000). See also, Godwin v. Swift Co., 270 N.C. 690, 155 S.E.2d 157
(1967).
3. Plaintiff is entitled to have defendants pay for attendant care provided to him by his wife, Linda Erwin, in the amount of $10.00 per hour for six hours per day, seven days per week, and 12 hours per day on the weekend beginning March 4, 2004, the day such care was authorized by Dr. Gaul and continuing. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Defendants' actions in this matter were not unreasonable and were not indicative of stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
Defendants shall pay Linda Erwin compensation at the rate of $10.00 per hour, beginning March 4, 2004, and continuing until further Order of the Commission for 6 hours a day, 7 days a week, for her attendant care services to Plaintiff.
Defendants shall pay for medical expenses incurred or to be incurred in the future as a result of Plaintiff's compensable injury for so long as such treatment may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
Defendants shall pay the costs.
This the 29th day of July 2008.
 S/___________________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________________ PAMELA T. YOUNG CHAIR *Page 1